IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DALE BANKS, | ) | |
| AIS #136966, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-21-WHA |
| | ) | (WO) |
| | ) | |
| KENNETH JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Christopher Dale Banks ("Banks"), an indigent state inmate, alleges that Warden Kenneth Jones acted with deliberate indifference to his safety by failing to protect him from attack by Martez Garrett, a fellow inmate, during a previous term of incarceration at the Bullock Correctional Facility ("Bullock").  *Compl. - Doc. No. 1* at 3.  Banks seeks a declaratory judgment, injunctive relief in the form of a transfer from Bullock and monetary damages for the alleged violation of his constitutional rights.  *Id*. at 4.[1]

The defendant filed a special report and supporting evidentiary materials addressing Banks' claim for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendant's report as a motion for summary judgment.  *Order of*

---

[1]Banks is now incarcerated at the Donaldson Correctional Facility.  Thus, his request for a transfer is moot.

*March 29, 2013 - Doc. No. 14*.  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the report, including his affidavit, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-24.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the deliberate indifference claim presented against him by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-94 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn

statements], or by depositions, answers to interrogatories, and admissions on file,"
demonstrate that there is a genuine dispute of material fact.). This court will also consider
"specific facts" pled in a plaintiff's sworn complaint when considering his opposition to
summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir.
2014). A genuine dispute of material fact exists when the nonmoving party produces
evidence that would allow a reasonable fact-finder to return a verdict in its favor.
*Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306,
1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences must accord
> deference to the views of prison authorities. Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to
survive the defendant's properly supported motion for summary judgment, Banks is
required to produce "sufficient [favorable] evidence" which would be admissible at trial
supporting his claim of a constitutional violation. *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the plaintiff relies]
is merely colorable . . . or is not significantly probative . . . summary judgment may be
granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the

opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987)

(If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk S. Rw. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Serv.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt

as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Banks has failed to demonstrate a genuine dispute of material

fact in order to preclude entry of summary judgment in favor of the defendant.

## III. DISCUSSION

### A. Absolute Immunity

To the extent Banks sues defendant Jones in his official capacity, Jones is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, defendant Jones is a state actor entitled to sovereign immunity under the Eleventh Amendment from any claim seeking monetary damages from him in his official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Deliberate Indifference to Safety - Failure to Protect

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of

keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff. They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga*., 400 F.3d 1313, 1321 (11th Cir. 2005) (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison*

9

*v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc)). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation, including one alleging deliberate indifference to an inmate's safety. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028-29, *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference*. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no*

*cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-38 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue

> must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L. Ed. 2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

11

Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

Consequently, to survive the properly supported motion for summary judgment filed by defendant Jones, Banks must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell*, 748 F.3d at 1100). If he establishes these objective elements, Banks must then satisfy the subjective component. To do so, Banks "must [show] that the defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. [*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)]. In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff*.**" *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk

of serious harm exists - and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).").

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005)

In December of 2012, Banks and inmate Martez Garrett were assigned to the Bullock Mental Health Segregation/Stabilization Unit. At approximately 10:40 a.m. on December 22, 2012, both inmates were removed from their cells to exercise on the outside yard and correctional officers placed each inmate in handcuffs prior to releasing them from their cells. At some point after removal of the inmates from their cells, Garrett slipped out of his handcuffs, approached Banks from behind and struck Banks in the head with his handcuffs. Officer Henry Hill immediately ordered Garrett to stop his assault and Garrett complied with this order. Correctional officers separated the inmates, placed Garrett back in handcuffs and transported the inmates to the health care unit for examination and treatment. During an investigation of the altercation conducted by Sgt. Parker, Garrett stated that "on December 19, 2012, Inmate Banks called [Garrett's] mother a b---- and told [Garrett] to suck his d---." *Defendant's Exh. 3 to the Special Report (Incident Report) - Doc. No. 12-3* at 2. This admission by Garrett constitutes the first time correctional officials were made aware of the verbal exchange between Banks and Garrett. Garrett also advised Sgt. Parker that sometime after Banks made these statements to him "he found a paper clip in his cell [which he concealed from correctional officers] and . . . befriended Inmate Banks." *Id.* Garrett further admitted that he utilized the paper clip "to pick the

13

cuff" prior to assaulting Banks.  *Id*.

Upon being advised of the attack on Banks, "Warden Jones directed that Inmate Garrett be placed in hand cuffs, leg irons, and belly chain whenever he is removed from his cell and . . . [assigned to] walk alone status until further notice."  *Id*.  Garrett also received a disciplinary for assault with a weapon.  *Id*.

Banks alleges that defendant Jones acted with deliberate indifference to his safety regarding the attack perpetrated against him by Garrett.  In support of this assertion, Banks argues that Jones failed to ensure his safety from this attack because in the weeks prior to this incident inmate Garrett "received a disciplinary for assault on another inmate" while assigned to Bullock's general population and, in his opinion, Garrett therefore constituted a threat to all other inmates.  *Compl. - Doc. No. 1* at 3; *Plaintiff's Response in Opposition - Doc. No. 18* at 2 (Inmate Garrett "was just wrote a disciplinary a few weeks ago for assault on another inmate over in the main prison. . . .  [He] clearly was a threat, and should have been on walk alone.").  Banks also asserts that because Garrett was "not a mental health inmate" he should not have been allowed on the exercise yard with mental health inmates. *Id*.  Banks, however, does not allege that he notified defendant Jones or other officials at Bullock that he felt threatened by Garrett or was in danger of being attacked by this inmate.

The defendant adamantly denies acting with deliberate indifference to Banks' safety. Specifically, defendant Jones states that:

Prior to December 22, 2012, I had no knowledge of any animosity, grudge or conflict between inmates Christopher Banks, 136966 and Martez Garrett, 274741. Prior to the assault on inmate Banks, I had received no information from inmate Banks that indicated he was having a problem with inmate Garrett nor did inmate Garrett give me any indication that he wanted to harm inmate Banks. I did not personally witness inmate Garrett assault inmate Banks.

\* \* \*

Both inmates Banks and Garrett were housed in the Disciplinary Segregation Unit within the Mental Health Unit [at the time of the incident]. The inmates housed in that unit are exercised together, so inmate Garrett was not restricted from being on the exercise yard [with inmate Banks] on December 22, 2012. . . .

*Defendant's Exh. 2 (Aff. of Kenneth Jones) - Doc. No. 12-2* at 1-2.

The defendant maintains that he had no knowledge of any impending risk of harm, substantial or otherwise, posed by inmate Garrett to Banks. The record is likewise devoid of evidence that Banks informed the defendant or any other correctional official that he was at risk of harm from inmate Garrett or that he feared for his safety from this inmate. Banks' mere allegation that inmate Garrett had in the weeks preceding the instant attack assaulted another inmate fails to establish either of the requisite elements necessary to proceed on a claim of deliberate indifference to his safety. Specifically, there is no probative evidence before the court of "an objectively substantial serious risk of harm" posed by inmate Garrett to Banks prior to the attack at issue as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028-29; *Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (Inmate-attacker's destructive behavior in cell prior to attack did "not

15

sufficiently allege that [attacker's] behavior created a 'strong likelihood' of injury to [inmate-plaintiff].");  *Carter*, 352 F.3d at 1350 (Deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature.").  Moreover, even if Banks had satisfied the objective component, his deliberate indifference claim nevertheless fails as he has not established that defendant Jones was subjectively aware of any risk of harm to him posed by inmate Garrett.  It is clear that the mere fact inmate Garrett previously received a disciplinary for assaulting another inmate fails to establish that the defendant had subjective knowledge that Garrett posed a substantial risk of harm to Banks.  *Johnson*, 568 F. App'x at 722 (complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed [to the plaintiff] by [his inmate-attacker].");  *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" where Plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life.");  *Johnston*, 135 F. App'x at 377 (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk

16

of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) ("[A]lthough Plaintiff asserts that [fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants]. . . .  The fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (emphasis in original) ("[W]e readily conclude the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim. While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate, prisoner ***Neisler***, he did not allege that the defendants had notice that he was in danger from ***Thomas***, the inmate who attacked him.  Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by Thomas.  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him ***from Thomas*** and failed to take protective measures, his claim fails."); *Gooden v. Mormon*, 524 F. App'x 593, 596 (11th Cir. 2013) (Plaintiff alleged Defendant "should have known that

17

[allowing inmates in his cell to clean a water spill] . . . exposed him to serious risk of injury because the other inmates appeared to be in a hostile mood and made aggravating remarks about having to clean up the spill in his cell.  Though this purportedly led to an unfortunate incident, the allegations fail to establish that [the officer] had subjective knowledge that [Plaintiff] could be seriously harmed."); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (Plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over a span of several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to."); *Harrison v. Culliver*, 746 F3d 1288, 1300 (11th Cir. 2014) (Although increasing the number of officers in an area of the facility "may have improved security, [the warden's] decision not to do so did not create a substantial risk of harm.  *Cf. Connick v. Thompson*, [563] U.S. [51], ----, 131 S. Ct. 1350, 1363, 179 L. Ed. 2d 417 (2011) ('[Section 1983] does not provide plaintiffs or courts *carte blance* to micromanage local governments throughout the United States.'"); *Purcell*, 400 F.3d at 1321 (Occurrence of previous inmate attacks and conditions, including permitting inmates to play cards, gamble and keep money in their cells, "failed to pose the substantial risk of serious harm necessary for a violation of the federal Constitution" where inmates were classified by the nature of their offenses, segregated based on potential conflicts with other inmates, staff was present at the time of the attack, serious inmate-on-inmate violence was not rampant, fights that

occurred were not linked to a recurring specific cause and jailers had a history of punishing inmate violence.).   In light of the foregoing, defendant Jones is entitled to summary judgment.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendant.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 13, 2015**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th

Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

      Done this 30th day of October, 2015.

                    /s/ Wallace Capel, Jr.
                    WALLACE CAPEL, JR.
                    UNITED STATES MAGISTRATE JUDGE